IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KEVIN L. K.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY ADMINSTRATION, <br><br> Defendant. | Case No. 6:21-cv-01699-JR <br><br> OPINION AND ORDER |

RUSSO, Magistrate Judge:

Plaintiff Kevin K. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Plaintiff applied for benefits on July 8, 2019, alleging disability as of May 24, 2013. Tr. 196-203. Plaintiff's application was denied initially and upon reconsideration. Tr. 69–90. On January 7, 2021, a hearing was held before an administrative law judge ("ALJ"). Tr. 57–68. The ALJ noted that the state agency consulting sources found insufficient evidence of any severe impairments prior to the date last insured ("DLI") and then presented counsel with a choice: "I can get a medical expert . . . and see if they can come up with limitations that the DDS did not" or "I can come up with an RFC to give it my best shot [which would] probably [be] some type of limited range of light work." Tr. 63–64. Plaintiff elected to reconvene for a second hearing with a medical expert ("ME"). Tr. 66.

On April 22, 2021, the ALJ held a second hearing, wherein Eric Schmitter, M.D., testified. Tr. 28–56. On May 7, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 15–22. After the Appeals Council denied review, plaintiff timely filed an appeal in this Court.

**THE ALJ'S FINDINGS**

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity from the alleged onset date through the DLI of March 31, 2017. Tr. 18. At step two, the ALJ determined plaintiff had the following medically determinable impairments during the adjudication period: "degenerative disc disease, status post right L5 hemilaminotomy, and medial facetectomy, foraminotomy, and microdiscectomy at L5-S1, gout, obesity, obstructive sleep apnea, left malleolar fracture, gastroesophageal reflux disease (GERD), hypertension, hyperlipidemia, and asthma." Tr. 18. However, the ALJ resolved that none of these impairments were severe prior to the DLI and therefore did not continue the sequential analysis. Tr. 19–22.

DISCUSSION

Plaintiff argues that the ALJ erred at step two by: (1) ignoring evidence that his degenerative disc disease lasted at least twelve months[2]; (2) misinterpreting the testimony of Dr. Schmitter; and (3) failing to develop the record by taking his testimony at either hearing or obtaining medical records from two treating physicians (Victor Lin, M.D., and Raymond Englander, M.D.). Pl.'s Opening Br. 9–32 (doc. 10).

As such, the resolution of this case initially hinges on whether the record contains sufficient evidence to establish that at least one of plaintiff's medically determinable impairments was "severe" prior to March 31, 2017.

At step two, the ALJ determines whether the claimant has a medically determinable impairment that has lasted, or is expected to last, for at least twelve consecutive months and "significantly limits" basic work activities. 20 C.F.R. §§ 404.1509, 404.1520. To deny a claim at step two, an ALJ must provide "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

---

[2] Plaintiff also references gouty arthritis in his knees and right foot as omitted severe impairments. Yet his brief acknowledges only two refences to this condition during the adjudication period. Pl.'s Opening Br. 13 (doc. 10). The first, from September 2015, concerns complaints of knee pain only. Tr. 465-66. At intake, plaintiff indicated he had been diagnosed with this condition since 2010 and had flare ups approximately once per year. Tr. 465. Although there was some tenderness "with a very small effusion" and warmth to the touch, plaintiff's range of motion was neither impaired nor particularly uncomfortable. Tr. 466. And the second, from November 2016, exclusively addresses complaints of foot pain, and plaintiff was "able to walk on it" and had a full range of motion, and "no edema or erythema or warmth on exam." Tr. 391-402. Thus, for the purposes of this appeal, the Court's analysis focuses on plaintiff's degenerative disc disease.

Page 3 – OPINION AND ORDER

In this case, the ALJ determined that plaintiff's medically determinable impairments were not severe for two reasons. First, the ALJ relied on the ME's testimony to find that the durational requirement was not met: "Dr. Schmitter . . . essentially agreed with the opinions of the State agency medical consultants, Lloyd Wiggins, M.D., and Jim Takach, M.D., at the initial and reconsideration determinations finding insufficient evidence to evaluate the severity of the medical impairment." Tr. 18–19. Second, the ALJ found that plaintiff "did not seek additional treatment for several years" following his December 2014 back surgery.[3] Tr. 20–21.

The ALJ's opinion is neither based on the proper legal standards nor supported by substantial evidence. Regarding the former, the ALJ called Dr. Schmitter to supplement the state agency consulting source opinions, who found that plaintiff's degenerative disc disease was severe based largely on post-DLI evidence (Drs. Wiggins and Takach only reviewed two records prior to 2019, and both of those were from January 2017). Tr. 70–75, 83–88. The ALJ seemingly accepted that plaintiff suffered from a medically determinable, severe impairment—the question on appeal

---

[3] The ALJ also referenced the lack of additional surgeries and that plaintiff "requested narcotics to 'allow him to continue working to meet occupational deadlines'" as belying the severity of his back impairment. Tr. 21. However, the fact that plaintiff's treating providers did not find another surgery beneficial, especially considering the results of his prior procedure, does not necessarily indicate a lack of medical severity. See Smolen, 80 F.3d at 1290 (an impairment "can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work") (citation and internal quotations omitted). And the quoted medical record – i.e., an April 26, 2016, chart note from Erik Young, M.D. – evinces treatment for low back pain. Tr. 592–94. In particular, plaintiff reported that, as he was "installing a shelf two days ago, [he] felt pain, like an 'ice pick' at sight [sic] of his surgery, pinching sensations . . . Ibuprofen doesn't work." Tr. 593. Upon examination, Dr. Young noted a decreased range of motion, tenderness, pain, and spasm in plaintiff's lower back. Tr. 594. Plaintiff was given a Toradol injection and prescribed Flexeril, and counseled to "continue with anti-inflammatories" and follow-up with his treating specialist. Tr. 593. This is the only chart note in the 1300 page record that mentions plaintiff engaging in more strenuous physical activity and therefore does not constitute substantial evidence, and it is undisputed that plaintiff was not engaging in any other occupational or work-like activity as of the alleged onset date. Cf. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

Page 4 – OPINION AND ORDER

concerned the potential onset date of any corresponding limitations. Indeed, at the first hearing, the ALJ recognized that plaintiff would have concrete work-related limitations of function associated with his physical impairments during the adjudication period. Tr. 63–64.

Despite this backdrop, the ALJ relied on Dr. Schmitter's testimony to determine plaintiff was not disabled, even though Dr. Schmitter was unprepared for the hearing and proffered confounding statements. *See Thielen v. Colvin*, 2014 WL 4384027, at *5 (E.D. Wash. Sept. 2, 2014) (examining doctor's "series of odd observations"—including inconsistent opinions surrounding the existence of certain mental health conditions—"reasonably cast doubt on the credibility of his conclusions").

In particular, Dr. Schmitter first denoted "the medical records really cover other times primarily," such that he did not "see any evidence of severe back problems." Tr. 39, 42. Once the ALJ directed him to plaintiff's December 2014 laminectomy, Dr. Schmitter admitted he "missed the operative report" and emphasized that he did "n[o]t have all the information," explaining he was "playing solitaire with a deck of 40 cards." Tr. 42. After briefly reviewing the December 2014 operative report, Dr. Schmitter opined that plaintiff's back impairment would be severe "in that interval of time," and "certainly [plaintiff] would be limited prior to that episode" and immediately post-surgery – the question was simply for how long. Tr. 44–46.

In response to the ALJ's statement, "it looks like [plaintiff] had a pretty good result from the microdiscectomy," Dr. Schmitter commented, "apparently [the surgery] was curative." Tr. 44–45. Counsel then pointed out "there [had] been evaluation of back and lower leg extremity pain for . . . approximately a year and a half up until this surgery," and that plaintiff continued to experience, and be treated for, lower back pain after the surgery. Tr. 49–50. Dr. Schmitter cursorily rejected counsel's statements, stating if there was "evidence showing [plaintiff] had this problem

for over a year, [he] couldn't find it" and that "there [were] no objective findings other than the subjective complaints." Tr. 49–52; *but see* Smolen, 80 F.3d at 1290 (ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity").

Contrary to Dr. Schmitter's assertions at the hearing and the ALJ's step two findings, the record contains documentation of more than four years of treatment for plaintiff's degenerative disc disease and low back pain. Plaintiff received emergency treatment following his May 24, 2013, motor vehicle accident; he was diagnosed with acute cervical and lumbar strains, prescribed Vicodin, and told to follow up with his primary care physician. Tr. 440.

Plaintiff sought treatment with a primary care provider on July 10, 2013, and reported pain in his lower back and into his right leg, especially when standing. Tr. 317. Between July and September 2013, plaintiff regularly attended physical therapy and noted some improvements but no overall abatement of his pain. Tr. 443–62; *see also* Tr. 368 ("[t]he patient has been to 16 physical therapy sessions with no relief").

Imaging conducted on December 30, 2013, revealed mild degenerative disc disease, and suggested a disc bulge and early degenerative osteoarthritis. Tr. 664–65. On January 23, 2014, plaintiff presented to Dr. Englander, a neurologist, complaining of tingling, numbness, and pain in his back and right leg since the date of the accident. Tr. 368. Plaintiff saw Dr. Englander again on May 15, 2014, and Dr. Englander reiterated that plaintiff "ha[d] been unable to work, unable to hunt, or do any of his usual activities due to back pain, and pain radiating down the right leg" since the accident. Tr. 354. A subsequent EMG suggested radiculopathy. Tr. 354.

On June 26, 2014, plaintiff visited another physician and was assessed for "[p]ersistent back and right leg pain despite exercise and analgesics." Tr. 337. Plaintiff was diagnosed with lumbosacral radiculopathy. Tr. 337–38. On July 15, 2014, plaintiff presented to Dr. Englander

after a lumbar spine epidural was mostly unsuccessful, as he continued to experience pain at levels between 6–9 out of 10. Tr. 350.

On July 22, 2014, imaging showed degenerative disc disease and a bulging disc, indicative of right L5 radiculopathy. Tr. 665–66.

A report on August 6, 2014, noted plaintiff's right leg pain and that he experienced "inadequate relief with oral medications" and physical therapy. Tr. 339. Plaintiff complained of pain levels at 10 out of 10 during activity, standing, and walking, and was documented as having degenerative disc disease. Tr. 339–40. That day, plaintiff received an epidural steroid to treat his lumbosacral radiculopathy. Tr. 341. The following day, plaintiff presented to Dr. Englander and stated that the treatment "caused an aggravation of back pain and made no change in his leg." Tr. 346.

On September 12, 2014, plaintiff visited neurosurgeon Daniel Hutton, D.O., complaining of "back pain and right lower extremity pain" dating back "approximately a year and a half," and reporting that none of the treatment he had received "ha[d] given him substantial benefit." Tr. 571. Plaintiff's "quality-of-life [was] severely negatively impacted from [his] pain." Tr. 571. An MRI that day revealed congenital spinal stenosis from L1-2 through L5-S1, asymmetrical disc bulge, and mild retrolisthesis of L5 on S1. Tr. 575. Dr. Hutton assessed plaintiff with "right S1 radiculopathy as relates [sic] to his right lateral recess stenosis at L5-S1," and sensory deficit distribution. Tr. 574–75.

On September 26, 2014, Dr. Hutton diagnosed plaintiff with a herniated lumbar intervertebral disc with radiculopathy and evaluated him for continued back and leg pain. Tr. 575–76. Dr. Hutton's findings that day included right L5-S1 disc herniation with right S1 radiculopathy, antalgic gait, and a positive straight leg raise on the right. Tr. 577. Dr. Hutton discussed the

potential of a right L5-S1 microlumbar decompression and microdiscectomy, and plaintiff agreed to that procedure. Tr. 578.

On December 16, 2014, plaintiff underwent back surgery with Dr. Hutton. Tr. 579. At a follow-up visit on December 23, 2014, Dr. Hutton noted that plaintiff "ha[d] done quite well from this operation, and ha[d] had resolution of his leg pain for the most part." Tr. 582.

Plaintiff returned to Dr. Hutton on February 5, 2015, who noted plaintiff's right leg pain "ha[d] completely resolved," but that he was "still troubled by some fairly substantial back pain, which certainly negatively impacted quality-of-life. He feels mostly [sic] when he is upright, as while doing dishes." Tr. 584. Dr. Hutton instructed plaintiff to "giv[e] it more time." *Id.*

On June 17, 2015, plaintiff saw Dr. Hutton again for "significant back pain" that was "present at all times the day." Tr. 586. Dr. Hutton did not recommend further surgery "in the absence of instability" and instructed plaintiff that the "continuation of nonsurgical options would be in his best interest." *Id.*

On March 17, 2016, plaintiff visited Hang Pham, M.D., for hypertension, hyperlipidemia, and back pain. Tr. 588. Dr. Pham's notes indicate plaintiff was seen ten days earlier by Dr. Lin for his "chronic lower back pain," who prescribed Effexor and ordered an MRI. Tr. 589. The following month, plaintiff sought treatment with Dr. Young for the exacerbation of his "chronic" low back pain. Tr. 592–94.

As of February 10, 2017, plaintiff was diagnosed by Dr. Pham with osteoarthritis in his back. Tr. 597. Dr. Pham's notes reflect plaintiff was concurrently being treated for degenerative disc disease by Dr. Englander, who "recommended a new cane" and that plaintiff continue with

"ibuprofen [and] flexeril."[4] Tr. 597.

Given plaintiff's DLI of March 31, 2017, the aforementioned records are the most relevant. The Court nonetheless denotes plaintiff continued to seek treatment for degenerative disc disease, and that Drs. Wiggins and Takach accepted this evidence to find plaintiff's back impairment both medically determinable and severe. *See F.B. v. Kijakazi*, 2022 WL 4544202, at *8 (N.D. Cal. Sept. 28, 2022) ("[w]here medical opinions refer back to the same chronic condition and symptoms discussed in earlier medical records—even those from several years prior—the fact that the most recent opinions were issued significantly after [the claimant's] DLI does not undercut the weight those opinions are due") (citation and internal quotations omitted); *see also Puckett v. Astrue*, 2012 WL 4322745, at *7–9 (D. Or. Sept. 19, 2012) (ALJ committed reversible error in finding the durational requirement unmet where the claimant consistently sought treatment for the same foot impairment; even though "there is a roughly eight month window . . . where there are no medical records documenting right foot pain, the absence of records does not conclusively establish that [the claimant's] foot condition was absent during that time"); *Daley v. Colvin*, 2014 WL 5473797, at *9 (D. Or. Oct. 28, 2014) (degenerative disc disease is a condition that, "by definition, progressively worsens over time").

In sum, the record is replete with evidence that plaintiff consistently reported and sought treatment for back and leg pain from his May 2013 accident through December 2014 back surgery (i.e., for more than 12 months). While surgery resolved his leg pain, both the pre-DLI and post-

---

[4] As delineated herein, the record demonstrates that plaintiff sought treatment for his back impairment from both Dr. Lin and Dr. Englander during the adjudication period; however, Dr. Lin's chart notes are not before the Court and Dr. Englander's records appear to be deficient. *See Webb*, 433 F.3d at 687 (in regard to a step two challenge, the ALJ's duty to further develop the record was triggered where there were "obvious vicissitudes in [the claimant's] health, particularly the ways in which his conditions improved and worsened as a result of the afflictions and their treatments").

Page 9 – OPINION AND ORDER

DLI evidence evinces that plaintiff's lower back pain became chronic and was associated with corresponding physical limitations. Therefore, the ALJ committed harmful legal error in concluding that plaintiff's degenerative disc disease was not severe.[5]

Accordingly, the question becomes the proper legal remedy. Because the ALJ prematurely stopped the sequential analysis, and the record has not been fully developed to the extent plaintiff was not afforded an opportunity to testify and the records of Drs. Lin and Englander are incomplete, further proceedings are warranted. See *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–02 (9th Cir. 2014) (outlining the standard for determining when a remand for further proceedings is appropriate); *see also Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) ("a remand is required to permit the ALJ to continue the sequential analysis" where the ALJ erred at step two).

Given the complex and long-standing nature of plaintiff's physical impairments, coupled with the remote alleged onset date, an in-depth functional assessment would be helpful. Testimony from plaintiff linking any physical restrictions to either the alleged onset date or DLI would also be helpful. Finally, additional efforts should be made to obtain plaintiff's treatment records from within the adjudication period. Therefore, upon remand, the ALJ must seek out additional records and a consultative exam and, if necessary, reweigh the medical and other evidence of record, formulate plaintiff's residual functional capacity, and obtain vocational expert testimony.

---

[5] Because the ALJ stopped the sequential evaluation process at step two and did not articulate a residual functional capacity or solicit testimony from plaintiff or a vocational expert, the Court cannot determine whether this error was harmless in light of the ALJ's alternate conclusion that plaintiff would not be disabled under "any applicable Medical-Vocational Guideline (such as 201.18 or 201.24)" even if he "were limited exertionally to the full range of sedentary work." Tr. 22; *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 8th day of November, 2022.

                                                /s/ Jolie A. Russo
                                                   Jolie A. Russo
                                      United States Magistrate Judge